340 F.2d 842
 JOSEPH A. BASS COMPANY, a Corporation, and St. Paul Fire and
Marine Insurance Company, a Corporation, Appellants,
v.
UNITED STATES, to the Use of PETER KIEWIT SONS' COMPANY, a
Corporation, Appellee.
 No. 17698.
 United States Court of Appeals Eighth Circuit.
 Feb. 2, 1965.
 
 Edmund T. Montgomery, of Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., made argument for appellants and filed brief with E. F. Engebretson, of Cox, Pearce, Engebretson, Murry & Anderson, Bismarck, N.D.
 F. J. Smith, of Fleck, Smith, Mather, Strutz & Mayer, Bismarck, N.D., made argument for appellee and filed brief with John J. Hogan, Omaha, Neb.
 Before VOGEL, MATTHES and RIDGE, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 In this Miller Act case, Title 40 U.S.C. 270a-270d, Joseph A. Bass Company, contractor, and St. Paul Fire and Marine Insurance Company, surety on its payment bond, have appealed from the judgment dismissing Bass' counterclaim in which it sought a judgment against Peter Kiewit Sons' Company in the sum of $45,896.12.[1]
 
 
 2
 Bass was the prime contractor with the United States for the construction of dormitories at Minot Air Force Base, Minot, North Dakota. Kiewit was a subcontractor for furnishing the labor, material and equipment for construction of a portion of the project-- all in accordance with the terms and conditions of a written contract with Bass. A separate oral agreement was entered into between the same parties whereby Kiewit agreed to furnish all the ready-mix concrete required for construction at a cost of $19.08 per cubic yard. Specifications were issued by the Government covering all phases of the project, and a copy of the specifications relating to the concrete construction was delivered to Kiewit.
 
 
 3
 On August 25 and August 28, 1959, Kiewit delivered 130.5 yards of readymix concrete to Bass which was used in constructing structural slabs at the second floor level. The slabs served as the floor for the second story and as the ceiling for all the first floor rooms in Dormitory 69. On September 2, 1959, the slabs were inspected, and a series of cracks appeared in both sides thereof. The cracking, weblike in appearance, was quite extensive. Under date of September 2 the Area Engineer of the Army Corps of Engineers advised Bass by letter that 'the above referenced floor slabs are not in conformance with the contract requirements, and are not acceptable. * * * This is not a stop order.' Bass suspended construction work adjacent to the slabs until September 16, 1959, but during the suspension period work progressed on other parts of the project.
 
 
 4
 Kiewit instituted this action on February 13, 1963, seeking to recover $21,328.17 alleged to be the balance due for labor and materials furnished under its subcontract. Bass interposed its counterclaim, sounding in breach of contract, breach of an implied warranty of fitness and negligence. The issues were tried to the Court, Judge Register, who found for Kiewit on its cause of action[2] and found against Bass on the counter-claim. Both parties appealed, but thereafter, pursuant to stipulation, we entered an order dismissing Kiewit's appeal.
 
 
 5
 In support of its ultimate judgment of dismissal of the counter-claim, findings of fact were filed, which in summary are (1) that the concrete furnished by Kiewit was in accordance with Government specifications, and that there was no proof of negligent processing of the concrete by Kiewit or its supplier; (2) that Bass had failed to prove by the preponderance of the evidence that the concrete was not fit for the purpose intended; (3) that while Bass was not permitted to make pours of concrete adjacent to the pours of August 25 and 28 on Dormitory No. 69, such withholding of permission was by Government inspectors and not by Kiewit; that the concrete was subsequently accepted by the Government and payment therefor was made to Bass; (4) that Bass failed to prove breach of warranty, breach of contract or negligence on the part of Kiewit; (5) that Bass failed to establish or prove any damage resulting from the concrete.
 
 
 6
 The propriety of the court's findings are challenged by the appellant. Indeed, it is manifest from the numerous points presented that the root question for determination is whether the court's findings are clearly erroneous within the meaning of Rule 52, Fed.R.Civ.P. We have repeatedly applied the definition of 'clearly erroneous' enunciated by the Supreme Court in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948): 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' e.g. Western Casualty & Surety Company v. Herman, 318 F.2d 50 (8 Cir. 1963); Mothner v. Ozark Real Estate Company, 300 F.2d 617 (8 Cir. 1962). Recently, we observed that a heavy burden is cast upon the party who seeks to set aside findings of fact of the trial court. Warnecke v. MacDonald Construction Company, 323 F.2d 715, 716 (8 Cir. 1963).
 
 
 7
 Whether there was an implied warranty of fitness, as contended by appellant, or whether the quality of the concrete was required to be determined in light of the government specifications, as asserted by appellee, is not of decisive importance. The trial court recognized and discussed all of appellant's pleaded theories in its memorandum opinion, stating:
 
 
 8
 'There is, in the court's opinion, an absence of any substantial proof that the concrete furnished by the plaintiff failed to comply with government specifications, * * * There is also, in the court's opinion, an absence of any substantial proof of negligent processing of the said cement by the plaintiff or its supplier. This leaves the issue of whether the defendant has sustained its burden of proving that the plaintiff breached a warranty and obligation to furnish such concrete as would be suitable and proper for the purpose intended. 'In the court's opinion, said defendant has failed to sustain such burden of proof by a fair preponderance of the evidence.'
 
 
 9
 It is fundamental that the burden of proof in any cause rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue and remains there until the termination of the action. Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (8 Cir. 1940), cert. denied 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940); 20 Am.Jur., Evidence, Sec. 135 (1961). More to the point is 46 Am.Jur., Sales, Sec. 309 (1961) where it is stated: 'the burden of proving a breach of warranty of kind, quality or title is on the buyer;' and our case of United States Rubber Company v. Bauer, 319 F.2d 463, 465 (8 Cir. 1963) where we recognized that under North Dakota law, the burden is on the party seeking to recover whether the action sounds in negligence or in breach of warranty.
 
 
 10
 We have studiously examined the evidence and have no difficulty in concluding that the trial court was on sound ground in finding that appellant failed to establish that the slabs cracked as the result of concrete that was not in accordance with the specifications or because the concrete was not fit for its intended use or because it was negligently processed by Kiewit. The fact of the matter is, the slabs were actually accepted by the Government and appellant was paid therefor. This circumstance, in itself demonstrates the fallacy of appellant's argument. Additionally, there was expert testimony that a number of factors in combination caused the concrete to crack. As the trial court pertinently observed:
 
 
 11
 'There is voluminous testimony concerning the weather conditions which existed at the time of these pours, the temperature fluctuations, the method and incidents of the 'curing', the significance and importance of such weather conditions and temperature variations as being an important factor in such curing, other pours of similar concrete in the area on other jobs under substantially similar weather conditions which gave no evidence of unusual cracking, * * *'
 
 
 12
 Inasmuch as the appellant failed to establish the first essential element of its claim, to-wit, that appellee is legally responsible for the cracking of the concrete slabs, the question whether appellant suffered damages recoverable from appellee as the result of the temporary suspension of work adjacent to the concrete slabs, becomes moot.[3]
 
 
 13
 Appellant also assigns as prejudicial error, the admission of the testimony of Kiewit's expert witness, Norman E. Henning, who stated that the cracking was neither unusual nor damaging and who was of the opinion that the cracking was not caused by unfit or inferior concrete. This witness, a civil engineer and who was employed as a testor by the Twin City Testing and Engineering Laboratory, examined and inspected the structural slabs at the request of Mr. Bass. Appellant does not attack the witness' qualifications but contends that his opinion was based upon factors not in evidence.
 
 
 14
 The trial court has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Rhynard v. Filori, 315 F.2d 176 (8 Cir. 1963). Equally well established is the rule that in nonjury cases the appellate court will not reverse on the basis of the admission of incompetent evidence, 'unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made.' Builders Steel Co. v. Commissioner, 179 F.2d 377, 379 (8 Cir. 1950); Willmark Service System Inc. v. Wirtz, 317 F.2d 486 (8 Cir. 1963) cert. denied 375 U.S. 897, 84 S.Ct. 170, 11 L.Ed.2d 125 (1963); Lessman v. C.I.R., 327 F.2d 990 (8 Cir. 1964); American Universal Insurance Co. v. Dykhouse, 326 F.2d 694 (8 Cir. 1964). We are not persuaded that the admission of Henning's testimony was prejudicial or erroneous. The trial court, although cognizant that the expert was not present at the time the concrete in question was poured, concluded that the testimony was competent and relevant by virtue of the expert's independent experiments with the concrete, examination of weather conditions and close investigation of the procedures taken in the formation of the concrete floor.
 
 
 15
 The judgment is affirmed.
 
 
 
 [1]
 Hereinafter, we shall refer to Joseph A. Bass Company as Bass or appellant; to Peter Kiewit Sons' Company as Kiewit or appellee
 
 
 [2]
 Kiewit sued for $21,328.17 which included $8,282.40 for removal of the waste material. Bass admitted it owed Kiewit a balance of $15,061.77, the amount of the judgment rendered in favor of Kiewit
 
 
 [3]
 As we have seen, the court found as a fact that appellant had failed to establish or prove any damage 'resulting from the concrete'. In its memorandum opinion, the court stated its was 'unnecessary to discuss the question of whether the various claimed items of damage proximately resulted from the breach of any obligation owed by the plaintiff to the defendant.'