Lawrence J. HOLT et al., Petitioners-
Appellees,

v.

Robert SARVER, Commissioner of Cor-
rections, et al., Respondents-
Appellants.

No. 20348.

United States Court of Appeals,
Eighth Circuit.

May 5, 1971.

Lay, Circuit Judge, concurred and filed opinion.

Name of counsel making argument for appellants is Ray Thornton, Atty. Gen., Mike Wilson, Asst. Atty. Gen., Justice Building, Little Rock, Ark.,

Names of counsel making argument for appellees are Stanley Bass, New York City, Philip E. Kaplan, Walker, Kaplan, Lavey & Mays, and Jack Holt, Jr., Bailey, Trimble & Holt, Little Rock, Ark.

Before MATTHES, Chief Judge, VAN OOSTERHOUT and LAY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by respondents Robert Sarver, Commissioner of Corrections, et al., from judgment entered in favor of petitioners in eight consolidated class actions brought by Holt, et al., inmates of the Cummins Farm Unit and the Tucker Intermediate Reformatory, parts of the Arkansas prison system, against Commissioner Sarver and the members of the Board of Corrections. The respondents under Arkansas law administer the State penitentiary system.

Petitioners individually filed pro se petitions on behalf of themselves and others similarly situated. The actions were consolidated by the trial court. Competent counsel was appointed to represent petitioners. An amended and substituted complaint was filed in which the alleged grievances are thus summarized:

"The actions of defendants have deprived members of the plaintiff class of rights, privileges and immunities secured to them by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, including (a) the right not to be imprisoned without meaningful rehabilitative opportunities, (b) the right to be free from cruel and unusual punishment, (c) the right to be free from arbitrary and capricious denial of rehabilitation opportunities, (d) the right to minimal due process safeguards in decisions determining fundamental liberties, (e) the right to be fed, housed, and clothed so as not to be subjected to loss of health or life, (f) the right to unhampered access to counsel and the courts, (g) the right to be free from the abuses of fellow prisoners in all aspects of daily life, (h) the right to be free from racial segregation, (i) the right to be free from forced labor, and (j) the right to be free from the brutality of being guarded by fellow inmates."

The prayer is for a declaratory judgment to the effect that the respondents' acts, policies and practices violate petitioners' rights under the Eighth, Thirteenth and Fourteenth Amendments to the Constitution of the United States and for appropriate permanent injunctive relief.

Chief Judge Henley, after an exhaustive evidentiary hearing, filed a memorandum opinion reported at 309 F.Supp. 362, wherein he makes detailed findings of fact and applies the law to such findings. A judgment and decree was entered on February 18, 1970, determining that the confinement of human beings at the Cummins and Tucker prisons under existing conditions fully described in the opinion constitutes cruel and inhuman punishment prohibited by the Eighth Amendment, made applicable to the States by the Fourteenth Amendment. The court also determined that the continuation of racial segregation of inmates in the institutions violated the equal protection clause of the Fourteenth Amendment.

The respondents were directed to take the necessary steps to bring the operation of the prisons up to federal constitutional requirements and they were required to make written report to the court by April 1, 1970, setting out what had been done and what they planned to do to meet the constitutional violations found by the court. The court reserved jurisdiction to take such further steps as may be appropriate to implement its determination that confinement in the Arkansas penitentiary system violates constitutional rights of the inmates in event the required reports are not made or prove unsatisfactory.

The respondents have taken this timely appeal from such judgment and decree. Respondents, as required by the court order, filed the April 1, 1970, report setting out the steps taken and contemplated to meet the constitutional violations. On April 15, 1970, the court ap-

proved such report as an interim report, noting that a reasonable start had been made to eliminate the unconstitutional conditions and that "the Court is most pleased with the response of the Governor and of the Legislature to the fiscal needs of the Penitentiary and has no reason to believe that the institution will not be adequately funded in the future, taking into consideration, of course, the overall financial condition of the State."

A report requested by the court giving further information as to disarming prison inmates and measures taken to protect the inmates from attacks by other inmates and the condition of the isolation cells was made on May 8 and was approved and accepted as an interim report by order of May 28, 1970. A required progress report showing prison conditions as of June 30, 1970, was filed by the Commissioners. The record shows no action taken thereon.

Additional facts to the extent necessary will be set out in the discussion of the issues.

It is desirable at this point to observe that some issues decided by the trial court are not before us on this appeal. It appears from the interim reports and the court's action thereon that the racial integration requirement of the court's decree has been fully met. No contrary contention is made in the briefs.

Petitioners on March 18, 1970, filed notice of cross-appeal. No brief in support of the cross-appeal has been filed.

Petitioners in the trial court raised the issue that their Thirteenth Amendment protection against involuntary servitude had been violated by requiring inmates to perform forced labor. The trial court rejected such contention. Petitioners in response to an inquiry in oral argument advised us that they are not here attacking the trial court's determination on the Thirteenth Amendment issue. The cross-appeal was dismissed on motion of appellant on January 8, 1971.

The primary issue before us is whether the trial court erred in holding that confinement of prisoners at Cummins and Tucker under conditions described constitutes cruel and inhuman treatment violative of the Eighth Amendment. Respondents urge that they are entitled to a reversal for the following reasons:

I. The suit is in effect one against the State of Arkansas and as such is barred by the Eleventh Amendment.

II. The court erred in refusing to exclude or strike the testimony of the witness Bennett and the report of Dr. Friel.

III. The court's findings are not supported by substantial evidence.

We reject each of such contentions for the reasons hereinafter stated, and affirm.

I.

■ The court overruled respondents' motion to dismiss, based on the ground that the suit is in effect a suit against the State and as such is barred by the Eleventh Amendment. It is quite true that the prison units here in controversy are state agencies and that the funds necessary to operate the institutions must come from State appropriations.

The Eleventh Amendment argument here made is completely answered by Judge Matthes in Board of Trustees of Arkansas A & M College v. Davis, 8 Cir., 396 F.2d 730, 732–733. The college in that case, like the prisons in our present case, is a State agency. As pointed out in *Davis*, the Supreme Court has since the foundation case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714, repeatedly recognized that an act of a state official which violates a federally guaranteed constitutional right may be enjoined upon the basis that the officer is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." 396 F.2d 730, 732, quoting from Ex parte Young, 209 U.S. pp. 159–160, 28 S.Ct. 441, 52 L.Ed. 714. Numerous applications of

such principle are cited in *Davis*. We adhere to the legal principles there stated.

In Jackson v. Bishop, 8 Cir., 404 F.2d 571, an action against the superintendent of the two identical prisons here involved, we determined that corporal punishment administered in the prisons constituted cruel and inhuman punishment. We enjoined the administration of corporal punishment. We adhere to the principles stated in *Jackson* including the admonition that a federal court should be reluctant to interfere with the operation and discipline of a state prison and that intervention is warranted only upon a clear showing of a violation of a federally guaranteed constitutional right. See Burns v. Swenson, 8 Cir., 430 F.2d 771, 775; Sostre v. McGinnis, 2 Cir., 442 F.2d 178 (1971); Wilwording v. Swenson, 8 Cir., 439 F.2d 1331 (1971).

Petitioners in their amended complaint did not contest the validity of the imposed sentences which they are serving nor do they ask to be released from custody. No claim for money damages is made. The Commissioner of Corrections and the members of the Board of Corrections are made parties both in their official and individual capacities. Relief sought is to enjoin the respondents from inflicting punishment violative of the Eighth Amendment. Jurisdiction is established under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3).

The motion to dismiss was properly denied.

## II.

Respondents' contention that the court committed prejudicial error in receiving and refusing to strike expert testimony of James W. Bennett, retired director of federal prisons, and the report of Dr. Friel made to the Arkansas Commission on Crime and Law Enforcement, lacks merit. A proper foundation for expert testimony on the part of Mr. Bennett has clearly been laid. We placed considerable reliance upon Mr. Bennett's testimony in Jackson v. Bishop, supra. The fact that Mr. Bennett had not visited the Arkansas prisons recently does not disqualify him as an expert witness but goes to the weight of his testimony.

Respondents, as required by FRAP Rule 28(e), have not set out in brief or appendix or given record citations to the questions, objections and answers of which they complain. We are not required to search the record for error. Moreover, as is pointed out in the next division, the evidence supporting the court's findings is strong.

Neither the appendix nor the part of the original record certified to us shows the report made by Dr. Friel to the Arkansas Commission on Crime or the circumstances under which such report was made. Apparently Dr. Friel made the report by virtue of his employment by the Arkansas Commission on Crime. Respondents have failed to establish that the report was improperly received over appropriate objection. Respondents have likewise failed to demonstrate that prejudicial error was committed in receiving the report.

In non-jury cases tried to the court it is well settled that we will not reverse for the erroneous reception of evidence unless it appears that the competent evidence is insufficient to support the judgment or that the court was induced by incompetent evidence to make an essential finding which it would not otherwise have made. Friedman v. Fordyce Concrete, Inc., 8 Cir., 362 F.2d 386, 389; Joseph A. Bass Co. v. United States, to Use of Peter Kiewit Sons' Co., 8 Cir., 340 F.2d 842, 845. No such showing has here been made.

## III.

Respondents in their brief urge that the evidence is insufficient to support some subsidiary fact findings made by the court. We are convinced from an examination of the voluminous record that Judge Henley's basic findings upon which the judgment and decree are predicated are supported by overwhelming

substantial evidence and that such findings afford a firm basis for his determination that imprisonment of inmates at the Cummins and Tucker units constitutes cruel and unusual punishment violative of the Eighth Amendment under conditions shown to have existed at the time of the decree. No useful purpose will be served by a detailed discussion of the events and the retreading of the ground so well covered by Judge Henley in his opinion. Judge Henley had previously determined in Holt v. Sarver, D. C., 300 F.Supp. 825 (Holt I), which opinion was filed on June 20, 1969, that substantially the same constitutional deficiencies existed at the institutions here involved. No appeal was taken from that determination. Other recent opinions dealing with Eighth Amendment violations at these institutions include Talley v. Stephens, D.C., 247 F.Supp. 683; Jackson v. Bishop, D.C., 268 F.Supp. 804; Jackson v. Bishop, 8 Cir., 404 F.2d 571; Courtney v. Bishop, 8 Cir., 409 F.2d 1185.

Commissioner Sarver, who also served as superintendent at the Cummins unit, as a witness frankly admitted that the physical facilities at both units were inadequate and in a total state of disrepair that could only be described as deplorable. Additionally, he testified that trusty inmates, some of whom were serving life or long term sentences, constituted 99% of the security force of the prison system. For the approximately 1,000 inmate population only eight free world (non-inmate) guards were employed and these guards were poorly paid and lacked proper training. One hundred and fifty gun carrying trusties, who control all of the weapons at the prison, must be relied upon to guard and protect the prisoners.

The trusties sell desirable jobs to prisoners and also traffic in food, liquor and drugs. Prisoners frequently become intoxicated and unruly. The prisoners sleep in dormitories. Prisoners are frequently attacked and raped in the dormitories and injuries and deaths have resulted. Sleep and rest are seriously disrupted. No adequate means exist to protect the prisoners from assaults. There is no satisfactory means of keeping guns, knives and other weapons away from the prison population.

The reports filed by the Commissioner at the court's direction clearly confirm the findings of Eighth Amendment violations. We deem it unnecessary to go into any greater detail in discussing the substantial evidence supporting the court's findings.

■ Eighth Amendment violations form the basis for federal court intervention in the administration of a state prison. A factual showing of cruel and unusual punishment violative of the Eighth Amendment is a prerequisite. Jackson v. Bishop, supra; Sostre v. McGinnis, supra. In *Sostre*, Judge Kaufman aptly states:

"For a federal court, however, to place a punishment beyond the power of a state to impose on an inmate is a drastic interference with the state's free political and administrative processes. It is not only that we, trained as judges, lack expertise in prison administration. Even a lifetime of study in prison administration and several advanced degrees in the field would not qualify us *as a federal court* to command state officials to shun a policy that they have decided is suitable because to us the choice may seem unsound or *personally* repugnant. As judges we are obliged to school ourselves in such objective sources as historical usage, see Wilkerson v. Utah, 99 U.S. 130, 25 L.Ed. 345 (1870), practices in other jurisdictions, see Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), and public opinion, see Robinson v. California, 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), before we may responsibly exercise the power of judicial review to declare a punishment unconstitutional under the Eighth Amendment.

"Accordingly, we have in the past declined to find an Eighth Amend-

ment violation unless the punishment can properly be termed 'barbarous' or 'shocking to the conscience.'" 442 F. 2d 178, 183–185.

Judge Henley recognized such standards as is reflected by his statement reading:

"The Court, however, is limited in its inquiry to the question of whether or not the constitutional rights of inmates are being invaded, and with whether the Penitentiary itself is unconstitutional. The Court is not judicially concerned with questions which in the last analysis are addressed to legislative and administrative judgment. A practice that may be bad from the standpoint of penology may not necessarily be forbidden by the Constitution. And a prison system that would be excellent from the view point of a modern prison administrator may not be required by the provisions of the Constitution with which the Court is concerned." 309 F.Supp. 362, 369.

### REMEDY.

No criticism is made by any party of the form of relief granted. Judge Henley in his opinion expressed a realization that conditions at a prison cannot be corrected overnight. Legislative appropriations are required to obtain funds needed for the correction of constitutional deficiencies. Time is needed to recruit and train qualified free world guards. Judge Henley, by way of directions to state officials, in his opinion states:

"If Respondents will move in good faith and with diligence in the areas of prison life just discussed, namely, the trusty system, the barracks system, inmate safety, and the isolation cells, the Court thinks that subsidiary problems will tend to take care of themselves. It would be a mistake to

order too much at this time; but, in the areas just mentioned Respondents will be required to move." 309 F. Supp. 362, 385.

The reports on file show substantial progress in meeting the constitutional deficiencies. Money has been appropriated for new buildings and needed improvements and for the employment of additional free world guards. The trial court has recognized that the State is making a sincere effort to remedy the deficiencies. The last report before us covers the period to June 30, 1970. The court upon remand should require an up-to-date report on the progress made in meeting the constitutional violations. A hearing thereon should be held to determine whether appropriate steps have been taken to cure the constitutional deficiencies found by the court, after which such further order as may be appropriate should be entered.

■ Supervision over the state prisons by a federal court should of course not be kept in force for any longer period than necessary to provide reasonable assurance that incarceration therein will not constitute cruel and inhuman punishment violative of the Eighth Amendment.

The judgment is affirmed. The case is remanded to the trial court for further proceedings consistent with the views herein expressed.

LAY, Circuit Judge (concurring).

I fully concur. I sincerely hope it is not wasted rhetoric to express additional judicial condemnation of the conditions and practices carried out by the State of Arkansas in operating its system of "correction." Contemporary conditions in Arkansas do not vary greatly from those condemned in England in the 1700's.[1] The Eighth Amendment prohibiting "cruel and unusual punishment" relates to "evolving standards of decency

---

1. Toward the end of the 18th Century John Howard was Sheriff of Bedfordshire. Because of the deplorable conditions in London prisons he resigned to spend the remainder of his life working for prison reform in England. He found that prisons were not sanitary or secure; there was no effective supervision of prisoners; there existed "physical and moral corruption of the com-

that mark the progress of a maturing society." See Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). The present record reflects the prison system at Cummins Prison Farm to be not only shocking to "standards of decency," but immoral and criminal as well.

New buildings and additional guards, although essential for compliance with the court's decree, fall far short of remedying the defilement of individuals and the inhumane treatment of prisoners practiced in the name of the state. Imprisonment in buildings of newly laid brick with the most rigid security will not alleviate the depravity and criminality which are fostered by the Arkansas prison system. The district court recognized this when it stated:

> "The absence of an affirmative program of training and rehabilitation may have constitutional significance where in the absence of such a program conditions and practices exist which actually militate against reform

and rehabilitation." 309 F.Supp. at 379.

Until immediate and continued emphasis is given to an affirmative program of rehabilitation the district court should retain jurisdiction.[2]

---

mon wards and yards"; there were no separate cells for safe sleeping; there was no useful work performed by the prisoners, no educational efforts made on their behalf, and no moral or religious instruction to restore them as useful members of society. C. B. Beccaria, On Crimes & Punishments (1764); J. Howard, The State of the Prisons, etc. (1777), as found in Encyclopedia Britannica, "Prison," Vol. 18, pp. 514-515 (1956).

2. As far back as 1870 the American Prison Association recognized rehabilitation and moral regeneration, rather than vindictive retribution, to be the fundamental aims of correction. See paper given to American Correctional Ass'n by Robert Kutak, Omaha, Nebraska, Oct. 15, 1970. Monograph, Outside Looking In (LEAA 1970).

Several states have recognized the need for implementation of correctional treatment. See e. g. N.Y. Correc.Law § 136 (McKinney's Consol.Laws, c. 43, 1968):

> "The objective of prison education in its broadest sense should be the socialization of the inmates through varied impressional and expressional activities, with emphasis on individual inmate needs. The objective of this

program shall be the return of these inmates to society with a more wholesome attitude toward living, with a desire to conduct themselves as good citizens and with the skill and knowledge which will give them a reasonable chance to maintain themselves and their dependents through honest labor. To this end each prisoner shall be given a program of education which, on the basis of available data, seems most likely to further the process of socialization and rehabilitation. The time daily devoted to such education shall be such as is required for meeting the above objectives. The director of education, subject to the direction of the commissioner of correction and after consultation by such commissioner with the state commissioner of education, shall develop the curricula and the education programs that are required to meet the special needs of each prison and reformatory in the department."

Mo.Ann.Stat. § 216.090(1) (1962) reads:

> "[I]n the correctional treatment applied to each inmate, reformation of the inmate, his social and moral improvement, and his rehabilitation toward useful, productive and law-abiding citizenship shall be guiding factors and aims."