**James E. X. STOKES**

v.

**INSTITUTIONAL BOARD OF PATUXENT, STATE OF MARYLAND, et al.**

**Civ. No. 73-101.**

United States District Court,
D. Maryland.

April 25, 1973.

James E. X. Stokes, pro se.

Donald R. Stutman, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

James E. X. Stokes in this suit has challenged his release from the status of defective delinquent under Article 31B, § 1 et seq. of the Annotated Code of Maryland and his subsequent transfer to the Maryland Penitentiary and the reimposition of his original sentence, all as authorized by § 13(d) of Article 31B. He alleges his claims arise under 42 U. S.C. §§ 1983 and 1985 and asserts jurisdiction under 28 U.S.C. § 1343.[1] He requests the convening of a three-judge court under 28 U.S.C. § 2281 to declare § 13(d) of the Maryland defective delinquent law unconstitutional, order him back to Patuxent Institute as a defective delinquent and enjoin the Institutional Board of Review of Patuxent, defendants herein,[2] from making any further arbitrary transfers under this section of the law. The state has moved to dismiss and the court is in agreement that dismissal for failure to state a claim is appropriate.

From the pleadings, the following factual situation emerges. Stokes was convicted on May 21, 1968 of robbery and escape in the Baltimore City Criminal Court and was sentenced to 40 years, the sentence to date from July 27, 1968. He was thereafter examined as a possible defective delinquent and, on May 14, 1969, was found to be a defective delinquent and committed to Patuxent Institution for indefinite confinement and rehabilitative treatment, if such were appropriate. See Art. 31B, § 5. While at Patuxent, Stokes failed to respond to treatment and adopted a recalcitrant stance to his therapist's efforts. After two years of unsuccessful effort, the Institutional Board of Review examined Stokes' file and determined him to be untreatable. The Board petitioned the Criminal Court of Baltimore City, pursuant to Art. 31B, § 13(d), Annotated Code of Maryland, to remove Stokes' defective delinquent status, reimpose the balance of his 40-year term, and place him in the custody of the Department of Correction. An order to this effect was signed, and Stokes was placed in the Maryland Penitentiary. He was given full credit for the time he spent at Patuxent and, by the court's order, is no longer a defective delinquent and is thereby subject only to the terms of the sentence given to him on his conviction, which sentence had been suspended when he was placed in defective delinquent status. Stokes was not notified by the Board of their contemplated action, nor was he given an opportunity to present his position to the court which revoked his defective delinquent status.

██ Stokes questions the constitutionality of § 13(d) of the Maryland defective delinquent statute and requests adjudication of the claim by a three-judge court. A three-judge court, however, is only required when the constitutional challenge to the statute is substantial. If the challenge is insubstantial, a three-judge court has no jurisdiction and the single judge may dismiss the claim. Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 312 (1962); German v. South Carolina State Ports Authority, 295 F.2d 491 (4th Cir. 1961). On examining the present complaint, the court concludes the constitutional challenge to the statute is clearly insubstantial.

The facial validity of the Maryland Defective Delinquent Act as a whole has been consistently upheld. See Tippet v. Maryland, 436 F.2d 1153 (4th Cir. 1971), cert. denied as improvidently granted, Murel v. Balt. City Criminal Court, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791

---

1. Stokes has asserted jurisdiction under a plethora of other federal statutes, none of which are relevant or viable for this proceeding.

2. In liberally construing this *pro se* complaint, the court will assume, both for §§ 1983 & 1985 and § 2281 purposes, that Stokes meant to name the individual members of the Institutional Board of Review.

(1972); Sas v. Maryland, 295 F.Supp. 389 (D.Md.1969); Director v. Daniels, 243 Md. 16, 221 A.2d 397 (1966), cert. denied sub nom. Avey v. Boslow, 385 U. S. 940, 87 S.Ct. 307, 17 L.Ed.2d 219 (1966). Similarly, to this court's mind, the part of § 13(d) responsible for Stokes' transfer is also clearly constitutional. Section 13(d), in pertinent part, states:

> The board may also request the court which imposed upon the person the original sentence resulting in his being subsequently classified as a defective delinquent, to reinstate the said original sentence; and the said court is authorized and empowered following such a request to reinstate and reimpose the said original sentence, and to cause the said person to be held in custody therefor, as provided hereinbelow.

"Provided hereinbelow" are provisions which guarantee the inmate full credit for the time spent in Patuxent. Section 13(f) states, in pertinent part:

> Upon return of a person to the custody of the Department of Correction there shall be deducted from the original sentence all time spent in the custody of Patuxent Institution and in the custody of the Department of Correction. The Department shall make such allowances or (disallowances) relating to good behavior and/or work performed as the Board of Correction may determine under the provisions of § 688 of Article 27 of the Code. Patuxent Institution shall furnish the Department of Correction with such information from the records of such person's period of confinement in the Institution as the Board of Correction shall reasonably require for determining the application of the said § 688, which shall apply to such person's period of commitment to Patuxent Institution with any variation of the regulations issued under said section as the Board of Correction shall consider appropriate in the particular case.

Section 13(d), thus, empowers the Institutional Board of Review to request of the court that an inmate of Patuxent be recommitted to the custody of the Maryland Department of Correction even though he has not been rehabilitated or cured of his criminal propensity. Sas v. Maryland, 334 F.2d 506 (4th Cir. 1964). The inmate's status as a defective delinquent is removed though he still remains in fact a defective delinquent. When the defective delinquent status is removed and the original sentence reinstated, the inmate is not obligated beyond the term of his original sentence. He would, of course, lose any benefits confinement at Patuxent offered over confinement at another institution.

■ ■ The statute does not provide, however, for any method for the inmate to contest his removal from defective delinquent status, nor does it appear any such method is voluntarily provided by common practice. Plaintiff complains that this denies an inmate due process of law, but in this court's opinion, such is not the case. There is no constitutional or statutory right to have the status of a defective delinquent which requires due process of law before it can be divested. The purpose of the defective delinquent law is to protect the public from those of habitual criminal inclination by either removing that inclination by treatment or confining indefinitely for treatment. There is no guarantee to persons committed beyond the guarantee that rehabilitation will be attempted. If in the judgment of the Institutional Board of Review that attempt fails, the court upon proper request may terminate the status. This court perceives no due process violations in the termination of one's status as a defective delinquent by an *ex parte* process. None of the due process considerations involved in the recent case of McNeil v. Director, Patuxent Institution, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972) are here present. When a person is removed from Patuxent under § 13(d) and required to serve the bal-

ance of his sentence, he loses nothing which he has a right to receive.

It is clear the inmate has no right to confinement in one institution as opposed to another, United States ex rel. Stuart v. Yeager, 293 F.Supp. 1079 (D.C.N.J.1968), aff'd. 419 F.2d 126 (3d Cir. 1969), cert. denied, 397 U.S. 1055, 90 S.Ct. 1400, 25 L.Ed.2d 673 (1969); Lewis v. Gladden, 230 F.Supp. 786 (D. Oregon 1964), or the right to rehabilitation if his confinement is of finite duration. Smith v. Schneckloth, 414 F. 2d 680 (9th Cir. 1969); Holt v. Sarver, 309 F.Supp. 362 (E.D.Ark.1970), aff'd. 442 F.2d 304 (1971); Wilson v. Kelley, 294 F.Supp. 1005 (N.D.Ga.1968). The imposition of the balance of the sentence, likewise, does not require due process for, being a continuation of a criminal prosecution, the reimposed sentence is a result of a completed criminal process in which due process was afforded. The statute, for these reasons, does not offend the due process clause.

In like manner, the court finds the statute consistent with the equal protection clause. There is clearly a rational basis for the statutory provision permitting the removal from the confines of Patuxent of an inmate who has proven not amenable to treatment and the length of whose original sentence guarantees the protection of the public. The continuation of such an inmate in Patuxent's program would be counterproductive to the ideas it is founded on. If an inmate is not likely to be rehabilitated and will not be quickly returned to society, it is rational to remove him from Patuxent so that time and energy can be devoted to those who may be treatable.

The removal of a factual defective delinquent from Patuxent does not violate the Eighth Amendment either. Not being legally insane and hence not responsible for his acts, it is not cruel and unusual punishment to deny a person with criminal propensities the *best* rehabilitative opportunities that can be offered. The court is hardly ready to conclude

confinement in the Maryland Penitentiary is *per se* cruel and unusual and indeed, had no one petitioned for a defective delinquent examination, it is quite likely that Stokes would have been incarcerated there.

The court next considers whether the statute has been constitutionally applied and correctly administered according to its terms. On carefully viewing the complaint, the court finds no facts alleged which, if true, would show any of Stokes' rights under 42 U.S.C. § 1983 have been abridged by the statute's particular application to him. Neither does the court perceive any purposeful or intentional conspiracy to deny him equal protection, in contravention of 42 U.S.C. § 1985(3), from the facts pleaded in the complaint, giving this *pro se* petition as liberal an interpretation as possible. Finally, also from what has been factually pleaded, the court finds nothing to indicate the act was not correctly applied according to its explicit provisions.

Accordingly, for the reasons stated herein, it is hereby ordered this 25th day of April, 1973, that defendants' Motion to Dismiss be and hereby is granted and the case dismissed for failure to state a claim.