**James RHEM et al., Plaintiffs,**

**v.**

**Benjamin J. MALCOLM, Commissioner of Correction for the City of New York, et al., Defendants.**

**No. 70 Civ. 3962.**

United States District Court, S. D. New York.

July 11, 1974.

The Legal Aid Society, New York City, for plaintiffs; William E. Hellerstein, Joel Berger, Steven A. Herman, New York City, of counsel.

Adrian P. Burke, Corp. Counsel, New York City, for defendants Benjamin J. Malcolm, Peter Schaefer and Abraham D. Beame, Leonard Bernikow, Kew Gardens, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants Peter Preiser, Malcolm Wilson, and Owen McGivern; David H. Berman, Asst. Atty. Gen., of counsel.

## MEMORANDUM

LASKER, District Judge.

On January 7, 1974, we filed an opinion holding that certain conditions existing at the Manhattan House of Detention (MHD) deprived its inmates, 80% of whom were untried detainees, of their constitutional rights. D.C., 371 F.Supp. 594. The matters in question included excessive imposition of maximum security conditions, limitations on visiting rights, the right to exercise and recreation; the lack of a "tolerable living environment" caused by excessive heat and noise, insufficient ventilation and inability to see out of the building; the refusal to give an inmate the option to be locked in his cell rather than in a common area; inadequate disciplinary procedures; and interference with correspondence rights and the right to receive publications. Our detailed opinion followed a trial of several weeks, as well as thorough pre- and post-trial briefing by both sides and the disposition, by a stipulation of settlement and a consent decree (entered August 2, 1973), of issues essentially relating to overcrowding, unsanitary conditions and inadequate medical care. Great progress has been made in reducing overcrowding. The population of MHD is now only 522, which is substantially below capacity. However, none of the other provisions of the consent decree has been fully executed although the due dates for their performance are long past.

We concluded the opinion of January 7, 1974, by stating:

"To remedy the violations at MHD will cost money and will require deliberate and careful thought and planning. The framing of a decree will demand the considered guidance of all concerned."

We instructed the parties to prepare for a conference to determine the contents of an order to implement the opinion. 371 F.Supp. at 637.

The history of the case since then has been one of frustration largely caused by the City defendants' delay and the absence or incompleteness of reports or plans of performance which they were ordered to submit, as we detail below.

Solely as a result of such noncompliance on the part of the City defendants, we are today entering an order that the City defendants close MHD within thirty days. The order is subject to reconsideration at such time as the City defendants submit a "comprehensive, detailed

and specific plan for the prompt elimination" of all conditions at MHD which we found in our earlier opinion to deprive the inmates of their constitutional rights and which still exist.

In view of the seriousness of the order which we are entering, it is appropriate to review in some detail the history of the case since the filing of our opinion six months ago.

On January 18, 1974, the parties conferred with the court as instructed in the January 7 opinion. At that time, plaintiffs submitted a proposed judgment, noticed for February 5, 1974, intended to implement the decision. Plaintiffs' proposed judgment provided that within thirty days the defendants submit a comprehensive and detailed plan for elimination of the conditions which the court found to be unconstitutional, as well as for immediate entry of final judgment on the questions of correspondence, receipt of publications, disciplinary procedures, visiting schedules and "optional lockout." The latter group of issues, on the whole, required little or no physical rearrangements at MHD or expenditure of funds, while it was understood that the former group, those that are still unperformed, such as the institution of a classification plan to avoid excessive imposition of maximum security conditions, provision for contact visits, and increased exercise and recreation facilities, as well as the remedying of intolerable environmental conditions, would demand planning, time and money.

In response to a request of the Corporation Counsel, dated February 11, 1974, the court granted the City an extension to February 14th to submit a counter-order. Defendants subsequently submitted a counter-order, which disappointingly, failed to deal with the critical issues which required money and planning.

On February 22, 1974, the court convened the parties for a further conference and thereafter, on February 25, 1974, directed the City defendants to submit by March 4, 1974:

"comments as to the proposed order earlier submitted by plaintiffs' counsel, including any reasons why the terms of the proposed order do not conform to the court's opinion of January 7, 1974, or why any of the terms of the proposed order are impracticable of accomplishment at this time, together with suggestions for alternatives replacing any terms objected to."

In response, the City submitted a "Memorandum of Law," which, however, failed to include a comprehensive plan as to the issues which could not be immediately implemented. Instead, the Memorandum remarked that "[t]he thirty day request for a submission of a comprehensive and detailed plan is not feasible" and recommended a further conference "to discuss the setting up of some reasonable and meaningful target date for such a plan."

Thereafter, on March 11, 1974, plaintiffs submitted a revised proposed judgment which contained modifications of the earlier version, but preserved its substance.

On March 19, 1974, the court signed the judgment now in effect, entered March 22, 1974. It made specific provisions as to inmate correspondence, receipt of publications and disciplinary provisions; set a date for a further evidentiary hearing as to arrangements for contact visits, and as to other issues ordered the City defendants, within thirty days (that is by April 21, 1974), to submit "a comprehensive and detailed plan for the elimination of all conditions and practices declared to be in violation of the Constitution of the United States by the Court's opinion of January 7, 1974 as to which final judgment has not been entered herein". On April 22nd, over the objection of plaintiffs, the court granted the City defendants a further extension, to April 29, 1974, to file the required plan.

On April 29, 1974, the City defendants submitted a proposed plan which, however, was deficient with regard to exercise and recreation, contact visits, elimination of noise, provision of adequate

ventilation or clear windows, and which, for the first time, advised the court that the defendants were "exploring the possibility of closing the MHD," although no target date was specified. The Corporation Counsel's letter transmitting the plan specified that "[i]n submitting said response the defendants do not acknowledge liability nor adopt the submission as the appropriate solution to the controversy herein."

On May 14th, the court again convened the parties and at the conference ordered the defendants to submit, within one week, a statement of the City's position as to the closing of MHD and to indicate a deadline by which a final decision would be reached. By letter of May 15th, the City defendants informed the court that a decision would be reached by June 15th.

In the interim, at a conference on May 29th, the City defendants were ordered to submit specific plans for physical alterations of MHD necessary to carry out the improvements required by both the opinion and the consent decree. They responded June 10th by a letter containing a "shopping list" which had been submitted to the Bureau of the Budget and which indicated that funding had been approved for renovation of the fifth and eighth floors (as required by the consent decree), but not for 1) renovation of visiting facilities for contact visits, 2) covering concrete floors with vinyl asbestos tile, 3) installation of a low level sound system, 4) accoustical treatment of ceilings and walls, 5) upgrading of the heating and ventilation system and 6) renovation of the tenth and basement floors, all of which were required to implement the opinion. The letter also indicated that funding had not yet been approved for 1) installation of a laundry system for inmate use, and 2) development of additional recreation and program space on inmate housing floors required by the consent decree.

At a conference on June 19th, the attorney for the City defendants stated that the City had reached a final determination to continue to operate MHD, but not to submit the comprehensive plan required by the court's order. By letter of June 20, 1974, the court ordered the City defendants to report in writing by June 24th the status of their compliance with the court's March judgment, including, in particular, the requirement that the defendants submit to the court the comprehensive plan referred to above. A copy of the court's letter is attached to our order filed today as Exhibit B. On June 24th, defendants informed the court by letter, a copy of which is attached to our order filed today as Exhibit C, that, with regard to such key issues as contact visiting, elimination of noise, inadequate ventilation, excessive heat, the defendants "cannot provide a time-table as to when this work will commence." It should be noted in this connection that the physical conditions in question constituted a significant factor leading to the conclusion stated in our opinion of January, 1974, that the inmates were being deprived of their constitutional rights. For example, as we stated in our earlier opinion, 371 F. Supp. at 607:

"Noise levels are intolerable. For example, on the eighth floor (a housing floor) a team of experts from the City's Environmental Protection Agency (EPA) which recently studied the situation with sophisticated noise-measuring instruments, found the volume of noise to be at least that of the New York City subways system (Transcript 1018). It must be emphasized that such levels are fairly constant during all waking hours."

Yet the City advises the court not only that it cannot provide a time-table as to when the required work will be completed but even when it will commence.

■■ Thus we are regrettably at a crossroads. As we have indicated above, we recognized at the conclusion of our January opinion that the changes at MHD necessary to assure constitutional standards would require time, money and planning. We have made every effort to afford the City defendants the time necessary to submit a plan and to find the

money; yet six months later neither has been produced. While we sympathize with the problems faced by those who are administering City affairs in an economic climate described only yesterday by the City Comptroller as a "liquidity crisis," the law does not permit any government to deprive its citizens of constitutional rights on a plea of poverty. The City's decision not to expend the necessary funds represents its determination of the priority to be given to the different items in its budget. However, expenditures not required by the Constitution may not be given priority over those needed to remedy a deprivation of constitutional rights. This is why the courts have reiterated that no governmental unit may be excused from according its citizens their constitutional rights because of a lack of funds. *See, e. g.,* Goldberg v. Kelly, 397 U.S. 254, 266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Justice, then Judge, Blackmun plainly put it in Jackson v. Bishop, 404 F.2d 571, 580 (8th Cir. 1968):

> "Humane considerations and constitutional requirements are not, in this day, to be measured by dollar considerations. . . . "

And one of the earliest cases dealing with the state's obligation to maintain a constitutionally adequate penal system, eloquently and aptly stated:

> "Let there be no mistake in the matter; the obligation of the Respondents to eliminate existing unconstitutionalities does not depend upon what the Legislature may do, or upon what the Governor may do, or, indeed, upon what Respondents may actually be able to accomplish. If Arkansas is going to operate a Penitentiary System, it is going to have to be a system that is countenanced by the Constitution of the United States." Holt v. Sarver, 309 F.Supp. 362, 385 (E.D.Ark.1970), aff'd, 442 F.2d 304 (8th Cir. 1971).

In our January opinion, we found that the conditions at MHD "manifestly violate the Constitution and would shock the conscience of any citizen who knew of them." 371 F.Supp. at 636.

While some improvements have been made in the conditions which then existed, nevertheless, six months after the filing of our opinion, the bulk of those conditions remain as they were. The City has not challenged the court's authority to require it to submit a plan for the elimination of these ills. Nevertheless, however respectful the tone, its posture throughout, confirmed by its letter report of June 24, 1974, constitutes a clear refusal to submit such a plan. It is for this reason and solely for this reason that we are today entering an order that MHD be closed within thirty days unless such a plan is submitted by then. We emphasize that all the City needs to do to avoid whatever difficulties may be caused by closing MHD is to put before the court a program of adequate funding to carry out within a reasonable time the changes required to make MHD a constitutionally acceptable detention facility. Miraculous overnight transformations are not expected, but we cannot accept the City's blank refusal to comply with major portions of our March order.

For purposes of reference, we attach to this memorandum a copy of the order we have signed today.

### ORDER

This action came on to be tried before the Court, Honorable Morris E. Lasker, District Judge, presiding, and the issues having been duly tried, and the Court having made and filed findings of fact and conclusions of law, all dated January 7, 1974; and

The Court having directed defendants Malcolm, Schaefer (now Rubin) and Beame, by order entered on March 22, 1974 (annexed hereto as Exhibit A), to submit to the Court and counsel for plaintiffs within thirty (30) days a comprehensive and detailed plan for the elimination of all conditions and practices at the Manhattan House of Detention for Men (the "Tombs") declared to be in violation of the Constitution of the United States by the Court's opinion of January 7, 1974 (except on the is-

sues of correspondence and discipline, as to which final judgment was entered on March 22, 1974); and

The Court having further directed defendants Malcolm, Rubin and Beame, by letter dated June 20, 1974 (annexed hereto as Exhibit B), to specify to the Court in writing, in detail, the status of their compliance with the Court's order of March 22, 1974; and

Defendants Malcolm, Rubin and Beame having replied to the Court, in a letter by their counsel dated June 24, 1974 (annexed hereto as Exhibit C), that it is not within the present budgetary capability of the City of New York to remedy several of the most serious conditions at the Manhattan House of Detention for Men declared unconstitutional in the Court's opinion, and that no timetable can be provided for the future elimination of these conditions, it is hereby

Ordered, Adjudged and Decreed that defendants Malcolm, Rubin and Beame be and hereby are enjoined from confining any persons in the Manhattan House of Detention for Men after August 10, 1974; and it is further

Ordered, Adjudged and Decreed that this order shall be subject to reconsideration by the Court at such time as defendants Malcolm, Rubin and Beame shall submit to the Court a comprehensive, detailed and specific plan for the prompt elimination of all conditions and practices at the Manhattan House of Detention for Men declared unconstitutional by the Court in its opinion of January 7, 1974.

## APPENDIX

## EXHIBIT A

## JUDGMENT

This action came on to be tried before the Court, Honorable Morris E. Lasker, District Judge, presiding, and the issues having been duly tried, and the Court having made and filed findings of fact and conclusions of law, all dated January 7, 1974, and the Court expressly determining that there is no just reason for delay in the entry of final judgment as to the issues of correspondence and discipline, it is hereby

Ordered, Adjudged and Decreed that defendants, Malcolm, Schaefer and Beame, and their agents and employees, be and hereby are enjoined from:

1. Reading any incoming mail addressed to plaintiffs from any court, attorney or public official, or any employee thereof acting in an official capacity;

2. Opening any incoming mail addressed to plaintiffs from any court, attorney or public official, or any employee thereof acting in an official capacity, except in the presence of the addressee;

3. Refusing to deliver to plaintiffs any book, periodical or other reading material on the ground that it has not been sent directly from a publisher; provided, however, that nothing contained in this paragraph shall prohibit defendants from inspecting for contraband said book, periodical or other reading material in order to protect the security of the institution.

4. Subjecting plaintiffs to any punishment for any disciplinary infractions without first according plaintiffs institutional hearings in accordance with the procedures set forth in Schedule A, annexed hereto;

5. Depriving plaintiffs found guilty of institutional infractions of the right to receive visitors and send and receive mail; and it is further

Ordered, Adjudged and Decreed that, it appearing that further evidence is necessary to determine an appropriate program of contact visiting, and of the hours of visiting, numbers of visitors and days upon which visiting should occur, a hearing will be held by the Court on the 27 day of March, 1974, at 10 A.M. in Room 619 of the Court House at which the testimony of witnesses presented by the parties shall be taken and any relevant evidence considered; and it is further

Ordered, Adjudged and Decreed that defendants Malcolm, Schaefer and Beame shall submit to the Court and counsel for plaintiffs within thirty (30) days of entry of this judgment a comprehensive and detailed plan for the elimination of all conditions and practices declared to be in violation of the Constitution of the United States by the Court's opinion of January 7, 1974 as to which final judgment has not been entered herein; and it is further

Ordered, Adjudged and Decreed that within thirty (30) days of submission of the above-mentioned plan, counsel for plaintiffs shall submit to the Court and to counsel for defendants any objections or comments thereto.

Dated: New York, New York March 19th, 1974.

### SCHEDULE A

### DISCIPLINARY PROCEDURES FOR THE MANHATTAN HOUSE OF DETENTION FOR MEN

In addition to according the accused all rights guaranteed under Rule 4.49 of the Rules and Regulations of the Department of Correction of the City of New York, the following procedures shall be followed:

#### 1. *Notice*

No later than thirty-six (36) hours prior to any institutional disciplinary hearing, the accused shall be given a written notice stating:

a) the precise institutional rule allegedly violated;

b) a summary of the factual allegations upon which the charge is based;

c) the maximum penalty which may be imposed should the accused be found guilty of the infraction;

d) the date and time when a disciplinary hearing will be held; and

e) all rights which the accused will have in the disciplinary proceeding, as set forth herein.

#### 2. *Hearings*

At all institutional disciplinary hearings, the accused shall have the right to:

a) call witnesses in his own behalf; and

b) confront and cross examine all individuals who have given information adverse to him.

#### 3. *Counsel or counsel-substitute*

The accused shall have the right to be represented by counsel, or if he so elects, counsel-substitute in all disciplinary proceedings where

a) The charge is one which may be punished by punitive segregation or loss of physical exercise periods, or which may be disclosed to the sentencing court in a criminal case, and the accused either seriously disputes the charge or states that he has substantial mitigating factors to present; or

b) There will be difficulty in presenting a defense because of the complexity of the charge or because the accused appears incapable of speaking effectively for himself; or

c) The charge describes an act which constitutes a crime.

"Counsel substitute" may include any law student or law school graduate awaiting the result of a bar examination and, where neither a member of the bar, law student or law school graduate is reasonably available, may include a fellow inmate.

#### 4. *Hearing Officer*

The individual presiding at the disciplinary hearing shall be impartial and shall not have taken part in any prior investigation of the charge.

#### 5. *Written Findings and Reasons*

Within twenty-four (24) hours of the conclusion of every disciplinary hearing at which an inmate is found guilty of an infraction, the hearing officer shall prepare and give to the inmate a written statement setting forth findings of fact and reasons for the decision.

EXHIBIT B

June 20th, 1974

TO: All Counsel
RE: Rhem v. Malcolm
70 Civ. 3962

This is to confirm the decisions arrived at in a conference in Chambers yesterday:

1. The City defendants are ordered to specify to the court in writing, in detail, (with a copy to plaintiffs' counsel) no later than the close of business Monday, June 24th, the status of their compliance with the court's judgment filed March 21, 1974, including in particular:

A. Ordering paragraphs numbered 1 through 5.

B. The provisions of the judgment, at the bottom of Page 2, ordering the defendants, Malcolm, Schaefer and Beame to submit to the court and counsel for plaintiffs a comprehensive and detailed plan for the elimination of all conditions and practices declared to be in violation of the Constitution of the United States by the court's opinion of January 4, 1974, as to which final judgment has not been entered. The subjects falling within the provisions of this ordering paragraph are:

i) optional lock-in;
ii) contact visiting, visiting hours, visiting numbers and visiting days;
iii) noise, ventilation, heat and windows;
iv) recreation and work opportunities;
v) correction officer staff and
vi) classification system.

2. The City defendants are ordered to specify to the court in writing, in detail, (with a copy to plaintiffs' counsel) no later than the close of business, Friday, June 28th, the status of their compliance with the provisions of the Consent Decree dated August 2, 1973.

Each of the compliance reports ordered to be submitted shall specify as to each item either:

A. That it has been complied with and, if so, how and when.

B. If it has not been complied with in full, whether it has been complied with in part and, if so, to what extent and when compliance will be complete.

C. If it has not been complied with at all, the reasons for non-compliance, the status of efforts towards compliance and the date of anticipated compliance.

D. As to any item as to which compliance has not occurred and plans for compliance have not been established, the reason for failure to establish such plans, the time by which such plans shall have been made and the time by which compliance is to be expected.

Very truly yours,
(s) Morris E. Lasker

EXHIBIT C

June 24, 1974

Hon. Morris E. Lasker
Judge, United States District Court
Southern District of New York
United States Court House
New York, New York 10007

Re: Rhem v. Malcolm
70 Civ 3962

Dear Judge Lasker:

This letter is submitted pursuant to your oral directions in Chambers on June 19, 1974 and your letter to "All Counsel," dated June 20, 1974, regarding the status of the City defendant's compliance with the Court's judgment filed March 21, 1974.

A. Ordering paragraphs numbered 1 through 5

Paragraphs 1, 2, 3 and 5 has been fully complied with. See Institutional Order Nos. 17, 20 and 21 enclosed.

With regard to Ordering paragraph No. 4, which deals with disciplinary procedures, the directions contained therein have not as yet been implemented. The notice form required by paragraph 1 of Schedule A will be prepared by June 28, 1974. This delay was due to the fact

that the Department had to work up an overall approach for each institution so that the disciplinary system would be implemented in all of their detention institutions. This was an administrative task of extreme difficulty.

We will implement the disciplinary procedures outlined in Schedule A in the Manhattan House of Detention not later than July 22, 1974. The Department found it necessary to provide attorneys on behalf of complainants in those instances in which an inmate is represented by an attorney.

B. The provisions of the judgment ordering the submission of a comprehensive and detailed plan.

i) optional lock-in

The implementation of an optional lock-in procedure requires 13 additional correction officers for the purposes of observation and patrol. There is no budget allocation for these officers nor is there a list currently available from which these officers can be appointed even if the allocation were provided. We are informed by the Department of Personnel that a list of Correction Officer eligibles will be established in September of this year.

ii) contact visiting, visiting hours, visiting numbers and visiting days

Contact visiting requires extensive renovation of present visiting facilities. See iii below for further details. We have previously submitted the department's increased visiting schedules.

iii) noise, ventilation, heat and windows

As in the case of contact visits, the requirements of this part of the judgment requires extensive renovation. While the City would like to go forward with this renovation and has already prepared tentative proposals for such work, and other work as well, which we submitted as attachments to our previous letter, the cost estimate for the entire proposed project is between seventeen and twenty-five million dollars, which is far in excess of what is available under the City's present budget availability. As a result, we cannot provide a time-table as to when this work will commence.

iv) recreation and work opportunities

The roof area is scheduled to be completed on July 30, 1974. The fifth and eighth floor renovation plans have been submitted to the Department of Public Works for detailed drawings and specifications. There have been moneys allocated in the present capital budget for the renovation of the fifth and eighth floors.

v) correction officer staff

A new post survey completed on March 15, 1974, calls for 272 correction officers at the Manhattan House of Detention. As of May 28, 1974, there were 259 correction officers assigned to this institution. A budget request has been made for the additional number. As mentioned previously, there is no list in existence from which appointments can be made nor has there been any action on our budget request.

vi) classification system

The work done for the development of a classification system has been completed. Because of the legal problems which have arisen over the constitutionality of questions in the classification questionnaire the program is not in operation. We foresee difficulty in meeting the October 1, 1974 deadline for the pilot implementation at the Queens House of Detention. The Department is exploring other alternatives to a classification system which should be implemented on a pilot basis prior to the end of 1974 at the Queens House of Detention. The Department is examining two systems presently in use. One at the Adolescent Reception and Detention Center and the other at the New York City Correctional Institution for Women.

Respectfully yours,

LEONARD BERNIKOW
Assistant Corporation
Counsel

CC: Joel Berger, Esq.

Enclosures