**Curtis E. ROWLAND, Plaintiff,**

v.

**Warden Charles L. WOLFF, Jr., Nebraska Penal and Correctional Complex, Defendant.**

**Civ. No. 1617 L.**

United States District Court,
D. Nebraska.

Nov. 2, 1971.

base dismissal of this petition on failure to exhaust administrative remedies.

Bernard Wishnow, Lincoln, Neb., for plaintiff.

C. C. Sheldon, Asst. Atty. Gen., for defendant.

## MEMORANDUM AND ORDER

URBOM, District Judge.

The plaintiff, Curtis E. Rowland, has brought suit against the warden of the Nebraska Penal and Correctional Complex,[1] alleging that his civil rights have been violated. The jurisdiction of this court has been properly invoked pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343.

Although the original petition made a number of broad complaints about the treatment accorded the plaintiff, it was stipulated at the pretrial conference of this matter that the major issue to be presented for trial would be whether the plaintiff had been denied visitation by two of his sisters in an arbitrary and discriminatory manner.

The facts surrounding the incident which led to the denial of visitation by Mr. Rowland's sisters are not seriously in dispute. The plaintiff has been incarcerated at the Nebraska Penal and Correctional Complex for approximately eight years. On March 20, 1967, the plaintiff was visited by two of his half sisters. The next day, then-warden Maurice Sigler received a report from an informant that Curtis Rowland had smuggled a pistol into the complex. All inmates were immediately confined within their cells and an extensive search was made. A 32-caliber automat-

1. On oral motion the present warden of the penal complex, Charles L. Wolff, Jr., was substituted for Maurice Sigler as defendant in this action.

ic pistol, clip, and ammunition were discovered in a filing cabinet in the basement of the chapel. The plaintiff, among others, was questioned as to his knowledge of the incident. Investigator Lynn Parks of the State Highway Patrol made a fairly detailed investigation of the plaintiff and his sisters, Linda (Marion) Jones and Mary Ellis Marion. Throughout the investigation the plaintiff and his sisters denied any knowledge of the incident. However, the warden subsequently removed the names of Mrs. Jones and Miss Marion from the plaintiff's list of approved visitors, although the other two sisters of the plaintiff are permitted to visit and have done so since March 20, 1967.

██ Institutional policy, as reflected in the Inmate Rule Book (plaintiff's exhibit 1), allows visits by sisters of inmates. The evidence indicates that other prisoners are allowed visits by sisters. The question for determination, then, is whether denial of visitation privileges to two of the plaintiff's sisters amounts to a deprivation of a constitutional right. I am confident that the plaintiff has no constitutional right to visitation from his sisters. Walker v. Pate, 356 F.2d 502 (C.A. 7th Cir. 1966); United States ex rel. Raymond v. Rundle, 276 F.Supp. 637 (U.S.D.C.E.D.Pa. 1967).

██ This does not completely answer the question, however, as a deprivation of some right or interest not necessarily constitutional in magnitude may be constitutionally impermissible if the effect of the deprivation is to place a chilling effect on the free exercise of some right that is constitutionally protected. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), or if the deprivation is the result of an invidious discrimination foreclosed by the equal protection clause of the Fourteenth Amendment. See Sawyer v. Sigler, 320 F.Supp. 690 (U.S.D.C. Neb.1970). The United States Supreme Court has expressly recognized that the deprivation of some interests,

even though not suggested as constitutional rights, must be attended by certain minimal safeguards. Slochower v. Board of Higher Education, 350 U.S. 551, 559, 76 S.Ct. 637, 100 L.Ed. 692 (1961). See also, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951).

Thus, if it could be shown that the deprivation suffered by the plaintiff fits into any of the three categories mentioned above, it is possible that he would be entitled to relief. It has not been suggested by counsel, nor does the evidence in any way indicate, that the deprivation of visiting rights with Mrs. Jones and Miss Marion was imposed as a sanction for the exercise of a constitutionally protected right, and that ground need not be considered.

 The plaintiff has advanced the contention that the treatment accorded him has been a violation of his right to equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Before some state action may be held to be a violation of the right to equal protection it must be shown that the complainant is a member of a class whose members are subjected to unequal treatment under the law. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). This may be shown by evidence that the class is invidiously or arbitrarily drawn, Torao Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S. Ct. 1138, 92 L.Ed. 1478 (1948), or that the class, although validly drawn, is treated unequally for no rational reason. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947). In this case there has been no showing that the plaintiff is within any definable class which has been defined arbitrarily or in an invidiously discriminatory manner. And, although the plaintiff is black, there was no evidence whatsoever to indicate that the denial of visitation

was in any way based on his status as a member of a minority race. Clearly, the plaintiff has not been denied his right to equal protection of the laws.

■ As noted earlier, it has been recognized that some interests, although not constitutional rights, may be deprived only after certain due process safeguards are observed. The plaintiff has here contended that no adequate fact-finding procedure was employed and that as a result the interest was taken away for reasons so lacking in foundation that the deprivation was arbitrary and capricious. In the face of such a contention, it is necessary to apply the balancing of interests test as outlined in Morrissey v. Brewer, 443 F. 2d 942 (C.A. 8th Cir. 1971), recognizing that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected." Cafeteria and Restaurant Workers Union Local 473 AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

Without in any way minimizing the interest that the plaintiff may have in the periodic visits of Mrs. Jones and Miss Marion, it is clearly outweighed by the interest of the state in preventing the introduction of lethal weapons into a penal complex. It would, I think, be difficult to overemphasize the dangers attendant upon such an occurrence, and preventing it is a prime consideration of those officials charged with maintaining the security of the institution. Accepting the premise that the purpose of due process requirements is to prevent arbitrary governmental action being directed against the individual, Thorpe v. Housing Authority of the City of Durham, 386 U.S. 670, 678, 87 S.Ct. 1244, 18 L.

Ed.2d 394 (1967) (Douglas, J., concurring), I am persuaded that the plaintiff was adequately protected from totally arbitrary action on the part of complex officials. An investigation of the incident was conducted prior to any official action. In this case the burden on the defendant is slight to overcome an allegation of arbitrary and capricious action.

■ This court will not intervene in matters shown to involve discretionary internal administrative decisions made by officials of the penal complex. Douglas v. Sigler, 386 F.2d 684 (C.A. 8th Cir. 1967); Burns v. Swenson, 430 F.2d 771 (C.A. 8th Cir. 1970). The correctness of the warden's decision is not a proper matter for review, nor will the question of whether either the plaintiff, Mrs. Jones, or Miss Marion was in fact involved in introducing the pistol into the complex be reconsidered. Investigator Lynn Parks of the Nebraska State Patrol submitted to the warden evaluations of polygraph examinations that he had conducted on the three. On this basis, among other factors, the warden took the course of action complained of in the petition. The factual basis on which the warden acted was not without foundation and was sufficient to avoid making his decision arbitrary or capricious. The fact that Curtis Rowland has consistently denied involvement or even any knowledge of the incident is of little consequence, as an indication of involvement on the part of Mrs. Jones and Miss Marion would clearly be grounds for denying them future entrance into the confines of the penal complex.

On the basis of the foregoing, I conclude that the plaintiff is entitled to no relief.

Therefore, it hereby is ordered that the petition is dismissed with prejudice.