James Vernon SELLERS, Petitioner-Appellee,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent-Appellant.

No. 75–1397.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1975.

Decided Feb. 12, 1976.

---

Mitchell B. Dubick, Dept. of Justice, Washington, D. C., Bert C. Hurn, U. S. Atty., Kansas City, Mo., Richard L. Thornburgh, Asst. Atty. Gen., Robert L. Keuch, Earl Kaplan, Attys., Washington, D. C., for respondent-appellant.

R. Steven Brown, Asst. Federal Public Defender, David R. Freeman, Federal Public Defender W. D. Mo., Springfield, Mo., for petitioner-appellee.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Dr. P. J. Ciccone, Director of the United States Medical Center for Federal Prisoners at Springfield, Missouri, appeals from a final judgment of the United States District Court for the Western District of Missouri that ordered the petitioner, James Vernon Sellers, transferred to "camp"[1] status at the institution and admitted to the institution's x-ray technician training program with reasonable dispatch. The District Court, on the basis of the magistrate's report and recommendation and supplements thereto, found that the reasons for denial of the petitioner's application to the x-ray technician training program lacked a rational basis in fact and were arbitrary and capricious. Accordingly, Sellers' *pro se* habeas corpus petition challenging the conditions of his confinement was granted.[2] We reverse.

Sellers was convicted on his plea of guilty of nine offenses of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and of one offense of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. On June 1, 1973, his original sentence was modified to an aggregate sentence of twenty-five years of imprisonment under the provisions of 18 U.S.C. § 4208(a)(2). He was then brought to the United States Medical Center for Federal Prisoners for evaluation. While at the Medical Center, Sellers applied for and was denied admittance to the institution's x-ray technician training program. The only reason advanced on appeal[3] for the refusal to accept the petitioner's application is that he, being a long-term inmate, is not within ten years of a firm release date as required by the Medical Center's policy.[4] Sellers has approximately fourteen years to serve before that time.

Sellers alleges in his *pro se* petition that he "is being denied his rights to rehabilitation". The allegation is overbroad. He has not been denied the right to participate in other available rehabilitative programs. The narrow question presented is whether Sellers is entitled to relief in habeas corpus because he has been denied admittance to a specific rehabilitative program.[5]

The administration of the rehabilitative programs for federal prisoners is statutorily vested within the discretionary authority of the Attorney General. 18 U.S.C. §§ 4001(b)(2) and 4042. The courts will not, as a general rule, audit the exercises of that discretionary power. *See Burns v. Swenson,* 430 F.2d 771, 775 (8th Cir. 1970), *cert. denied,* 404 U.S. 1062, 92 S.Ct. 743, 30 L.Ed.2d 751

1. The "camp" is the prison portion of the Medical Center. The term of confinement of an inmate in "camp" status is not, unlike a patient, dependent upon his recovery from illness or the completion of his medical evaluation.

2. Pursuant to order of the District Court, counsel was appointed to represent the petitioner.

3. An additional reason advanced below was the petitioner's psychiatric background. The prison policy statement, however, excludes only inmates who have been certified as psychotic by a medical staff. In *Sellers v. Ciccone,* Civil Action No. 74CV426–S–WHB (W.D.Mo. September 23, 1974), the petitioner was found to be neither psychotic nor any longer in need of treatment at the Medical Center, and his petition to restrain and enjoin his pending transfer from the institution was denied. Also, the respondent no longer argues that Sellers' application for x-ray technician training was properly denied under the discre-

tionary authority granted by 18 U.S.C. §§ 4001(b)(2) and 4042, because of his scheduled transfer from the Medical Center. *See Sellers v. Ciccone,* Civil Action No. 74CV664–S–WHB–R (W.D. Mo. January 12, 1975).

4. Policy Statement H–7001.6B requires as a condition for acceptance into paramedical training that the inmate "qualify for transfer to Springfield Camp". Policy Statement H–7200.12B relating to eligibility for Springfield Camp requires that the inmate be within ten years of a firm release date. The petitioner's argument ignores, at times, this interrelationship of the two policy statements.

5. The denial of all rehabilitative training to a prisoner who can benefit therefrom is violative of the prisoner's constitutional rights. *See Finney v. Arkansas Board of Correction,* 505 F.2d 194, 208–209 (8th Cir. 1974); *Holt v. Sarver,* 442 F.2d 304, 310 (8th Cir. 1971) (concurring opinion).

(1972); *Harris v. Settle*, 322 F.2d 908, 910 (8th Cir. 1963), *cert. denied*, 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964). Judicial relief will be granted, however, upon a showing that the discretionary authority has been exercised in an arbitrary or capricious manner.[6] *See Daugherty v. Harris*, 476 F.2d 292, 294 (10th Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); *Smith v. Schneckloth*, 414 F.2d 680, 681 (9th Cir. 1969); *Holland v. Ciccone*, 386 F.2d 825, 827 (8th Cir. 1967) (per curiam), *cert. denied*, 390 U.S. 1045, 88 S.Ct. 1646, 20 L.Ed.2d 307 (1968).

The prison policy advanced to justify the petitioner's exclusion from the x-ray technician training program states:

> The long-term inmate, to be eligible for consideration, must be * * * within ten (10) years of a firm release date at the time of referral.

The District Court found the exclusionary provision arbitrary because "there can be [no] rational discrimination between prisoners within 10 years of their 'firm release date' and those only slightly over the 10-year mark." But, because the petitioner may relatively soon satisfy the eligibility requirement, having approximately fourteen years to serve before his firm release date, does not make the provision unconstitutional. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, 548 (1975). It is inherent in the use of such predictive exclusionary factors, which draw a clear objective line of demarcation, that those close to the line may not be within the class of persons intended to be excluded.[7] As the Supreme Court stated in another context:

> [T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning,* supra. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

*Id.* at 777, 95 S.Ct. at 2472, 45 L.Ed.2d at 545–546.

The respondent advanced as a reasonable justification for the exclusionary provision the following:[8]

> The length remaining to be served on Petitioner's sentence would in the

---

6. Prison policies that affect other constitutional rights are, of course, also actionable. Thus, a restriction that affects a prisoner's access to the federal courts for the petition of grievances, or discriminates against a prisoner on account of his race or religious beliefs would be subject to judicial scrutiny. *See Lee v. Tahash*, 352 F.2d 970, 972 (8th Cir. 1965). It is not argued that the prison policy at issue promotes an unconstitutional purpose.

7. The District Court said: "The general disqualification, on the basis of the length of petitioner's sentence, is thus an impermissible discrimination." It cited in support of its conclusion *Earnest v. Willingham,* 406 F.2d 681 (10th Cir. 1969), and *Rowland v. Wolff,* 336 F.Supp. 257 (D.Neb.1971). Neither case is apposite.

8. The District Court stated that the justification was untimely asserted, it being relied upon neither during the administrative denial of the petitioner's application for entrance into the program, nor in the respondent's response to the habeas corpus petition. We disagree. It was stated from the first that the petitioner could not be admitted into the x-ray technician training program because of the length of his sentence. It was proper for the respondent to amplify upon and give the reason behind the length-of-sentence requirement. It would, of course, have been better for the respondent to have advanced the justification at an earlier time.

opinion of most prison administrators be a factor against admission to such a training course. It is of course beneficial to the prison system to have a highly trained motivated individual available for work for a long period of time. Nevertheless, the training exists primarily for the benefit of the inmate and not the prison authorities. Complex technical programs such as the x-ray training course are designed to make the inmate technically competent through formal and practical studies, to provide a short period of practical application thereafter, and to be fairly quickly paroled. Prolonged utilization in a prison setting is not considered desirable since the inmate may be diverted from his program due to other considerations or may become frustrated in his failure to practice his specialty in a "real" setting.[9]

We find the reason advanced for the denial of the petitioner's application to the program to be neither arbitrary nor capricious.[10] Further, there is nothing in the record to show that the use of this exclusionary provision was not justified by the difficulties attendant to individu-

al determinations. Indeed, the abandonment of the criteria for eligibility set out in the prison policy statements in favor of individual review in each case would appear to place the prison administrators in a near impossible situation. Satisfaction of each criterion does not guarantee admittance into the training program. They are, rather, merely screening factors by which the pool of eligible prisoners is determined. Final acceptance into the x-ray technician training program occurs after individual review of those eligible.

■ Further, we do not agree that the exclusionary provision is in derogation of 18 U.S.C. § 4208(a)(2) under which the petitioner was sentenced.[11] Assuming, as found by the District Court,[12] that the statute "contemplate[s] * * * that the Board of Parole shall exercise its discretion to release the prisoner at the precise point when his rehabilitation has been optimally achieved", there is nothing to suggest that its purpose will be frustrated. Sellers may pursue any of the other rehabilitative programs for which he is eligible in his effort to

---

9. The respondent also asserted that the petitioner could not be put in "camp" status, and hence was not eligible for the x-ray technician training program, because the Medical Center was not designed to provide the security necessary to house a long-term prisoner, such as the petitioner, who was guilty of armed bank robbery. This assertion relates to a separate and distinct criterion of eligibility under Policy Statement H–7200.12B. The District Court rejected this justification because: (1) it was not relied upon in the administrative refusal of the petitioner's application to the rehabilitative program; (2) it was not raised below until after the issuance of the magistrate's original report and recommendation; and (3) it was not followed in practice, the court finding, on the basis of its familiarity with the Medical Center and the many cases filed to it, that long-term prisoners guilty of other than "white-collar" crimes were assigned to "camp" status at the institution. Also, the District Court found that the petitioner "had an impeccable disciplinary and work record" and could function well in the general prison population. Nothing we have said in this opinion is to be construed as questioning the correctness of these findings.

10. Sellers alleged in his petition that other inmates with "sentences * * * as long as petitioner's" have been admitted into the x-ray technician training program. There is no evidence in the record to support this allegation. We note further, that the petitioner does not allege that prisoners who were not within ten years of a firm release date were admitted to the program.

11. 18 U.S.C. § 4208(a)(2) states:
   Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may * * * (2) * * * fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

12. The District Court based its conclusion in *Grasso v. Norton*, 371 F.Supp. 171 (D.Conn. 1974), *aff'd*, 520 F.2d 27 (2nd Cir. 1975).

achieve the maximum benefit from his § 4208(a)(2) sentence.

■■■ It is not within the province of the courts to determine the nature and purpose of the rehabilitative programs administered by the Attorney General in order to suit the desires of an individual inmate. While it may not be, as the District Court said, "universally true that, in every situation involving x-ray technician training, the training is 'primarily for the benefit of the inmate and not the prison authorities'", it is for the prison officials to determine, absent arbitrariness or caprice, the mix between individual benefit and institutional benefit that is most desirable.[13] Again, the fact that Sellers is relatively close to being able to satisfy the exclusionary provision at issue does not render that provision invalid.[14]

Having found the exclusionary provision disqualifying the petitioner from eligibility to the x-ray technician training program to be neither arbitrary nor capricious, the judgment of the District Court is reversed.[15]

---

13. The District Court relies heavily on the statement of purpose embodied in Policy Statement H–7200.12B, Inmate Eligibility For Springfield Camp. That statement reads:

Presently the majority of the inmates in our camp are serving short terms (five years or less) and have minimum treatment needs. In order to properly employ an inmate to assist in the diversified maintenance work carried on at this institution it is often necessary to provide them with considerable training. By the time they are sufficiently trained and experienced to be helpful, many are due for release. In order to alleviate this problem and to build up a more stable long-term work force, we are asking other Bureau of Prisons institutions to recommend long-term inmates for our Camp *when they*

*meet the criteria listed below.* (Emphasis added.)

We find nothing inconsistent with this statement of purpose and the requirement that an inmate, to be eligible, be within ten years of a firm release date.

14. It is not argued that it is unreasonable for the prison authorities to measure the length-of-sentence requirement from the firm release date rather than from the more contingent parole eligibility date.

15. In the light of our holding, it is unnecessary to review the respondent's other assignments of error.

