**Moses WHITE EAGLE et al., Plaintiffs,**

v.

**Clyde M. STORIE et al., Defendants.**

**Civ. No. 77–L–245.**

United States District Court,
D. Nebraska.

Aug. 15, 1978.

Walter R. Echo Hawk, Kurt V. Blue Dog, Native American Rights Fund, Boulder, Colo., Lawrence Hammerling, Michael J. Schilling, Inter-Tribal Legal Services, Winnebago, Neb., Robert V. Broom, Samuel J. Zeleski, Omaha Legal Aid Society, Omaha, Neb., for plaintiffs.

James P. Fitzgerald of McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, P. C., Omaha, Neb., Albert Maul, Thurston County Atty., Pender, Neb., for defendants Clyde Storie and the County Board of Supervisors, Thurston County, Nebraska.

Paul Douglas, Atty. Gen. for Nebraska, J. Kirk Brown, Asst. Atty. Gen. for Nebraska, Lincoln, Neb., for defendant Walter G. Huber.

MEMORANDUM

DENNEY, District Judge.

This is a class action, which was filed on December 2, 1977. The plaintiff class consists of all persons, male or female, who are presently or in the future will be incarcerated at the Thurston County Jail, Thurston County Courthouse, Pender, Nebraska. The class includes both pretrial detainees and those persons who have been convicted

of criminal charges and who are confined in the above institution pending or serving sentences, excluding those who at the time of confinement are or were minors. The defendants are the Sheriff, the Commissioners of Thurston County, Nebraska, and the District Court Judge for the Sixth Judicial District of Nebraska, sued in their official capacities.

This action is brought pursuant to 42 U.S.C. § 1983 and the United States Constitution. Jurisdiction exists under 28 U.S.C. §§ 1343(3), (4), providing for jurisdiction without regard to the amount in controversy in cases seeking redress from infringements of civil rights; under 28 U.S.C. § 1331, providing for jurisdiction in cases arising under the Constitution and laws of the United States; under 28 U.S.C. §§ 2201 and 2202, providing for declaratory and injunctive relief, and under the Court's pendent jurisdiction to hear claims arising under the laws of the State of Nebraska.

By virtue of this lawsuit, the plaintiffs seek to improve the conditions at the Thurston County Jail. In this attempt, the plaintiffs have presented various claims regarding the conditions at the jail. In this opinion, the Court will address itself to four of these claims: defendants' failure to provide adequate facilities and procedures for non-legal visitation; defendants' failure to provide adequate facilities and procedures for legal visitation; defendants' failure to provide an adequate law library; and defendants' failure to afford minimal due process safeguards.[1] The plaintiffs have requested summary judgment on all four claims. The defendants have requested summary judgment on only the law library and legal visitation issues.

### General Principles

It is the policy of federal courts to avoid interference with the administration of state prisons as federal courts are ill-equipped to handle the day-to-day problems of state penal systems. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433

U.S. 119, 127–28, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 274 (1972). This needed restraint is cogently described by Justice Powell in *Procunier v. Martinez, supra,* where he wrote:

> Traditionally, federal courts have adopted a broad hands-off attitude towards problems of prison administration. In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions. More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities. (Footnotes omitted).

*Procunier v. Martinez, supra,* 416 U.S. at 404–05, 94 S.Ct. at 1807.

However, when the conditions existing in our prisons rise to the level of constitutional

---

1. A fifth claim of false imprisonment was dismissed with prejudice by order of the Court [Filing # 84].

deprivation, the traditional "hands off" policy has yielded to increasing judicial scrutiny to protect incarcerated citizens from wholesale infringements of their constitutional rights. *See O'Bryan v. County of Saginaw, Michigan,* 437 F.Supp. 582, 594 (E.D.Mich.1977); *Barnes v. Government of Virgin Islands,* 415 F.Supp. 1218 (D.V.I. 1976); *Pugh v. Locke,* 406 F.Supp. 318, 328 (M.D.Ala.1976); *Rhem v. Malcolm,* 371 F.Supp. 594, 622–23 (S.D.N.Y.1974). This more active role was again articulated by Justice Powell in *Procunier v. Martinez, supra,* wherein he wrote:

But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. (Citations omitted).

*Procunier v. Martinez, supra,* 416 U.S. at 405–06, 94 S.Ct. at 1807. Thus the Court must search for minimal standards below which prison administrations may not act.

In ascertaining these minimal standards, the Court must balance the legitimate penal objectives against the prisoners' challenge to prison regulations based on asserted constitutional rights. *Pell v. Procunier,* 417 U.S. 817, 823, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1973). In *Pell v. Procunier,* the Supreme Court identified three legitimate functions of a correctional institution: deterrence; rehabilitation; and institutional security. *Pell v. Procunier, supra,* 417 U.S. at 822–23, 94 S.Ct. 2800. "Therefore, when a prison policy advances one of these valid goals, the Court is required to weigh the competing interests of the prisoner and of the state in pursuing that goal." *Pugh v. Locke, supra,* 406 F.Supp. at 328.

In undertaking this balancing process, the Court recognizes a well-established principle that an inmate, whether already convicted or merely detained pending trial, "retains all the rights of an ordinary citizen except those expressly or by necessary implication, taken from him by law." *Jackson v. Godwin,* 400 F.2d 529, 532 (5th Cir. 1968), quoting *Coffin v. Richard,* 143 F.2d 443, 445 (6th Cir. 1944). *See also Miller v. Carson,* 401 F.Supp. 835, 865 (M.D.Fla.1975), *aff'd and remanded,* 563 F.2d 741 (5th Cir. 1977). In *Bell v. Wolff,* CV 72–L–227 (D.Neb. 1973), Chief Judge Warren Urbom of this Court articulated those principles which are applicable to pretrial detainees against which the restrictive conditions of their confinement are to be tested.

[I]t must be stressed that the determinative principle against which all treatment of a pretrial detainee is to be assessed is that he is not to be subjected to any hardship, except those necessary to ensure his secure confinement and, hence, his appearance at trial. Considerations of necessary security aside, pretrial detainees have all rights of ordinary citizens because, not having been adjudged guilty of anything, they are ordinary citizens. *Anderson v. Nosser,* 438 F.2d 183 (C.A. 5th Cir. 1971); *Brenneman v. Madigan,* 343 F.Supp. 128 (U.S.D.C.N.D.Calif.1972); *Jones v. Wittenberg,* 323 F.Supp. 93 (U.S. D.C.N.D.Ohio 1971). *See Stack v. Boyle,* 342 U.S. 1 [72 S.Ct. 1, 96 L.Ed. 3] (1951). *Id.* at 2–3.

Thus, since pretrial detainees are presumed innocent until proven guilty, the imposition of punishment without conviction deprives the detainee of due process. *Miller v. Carson, supra,* 401 F.Supp. at 867; *Rhem v. Malscolm, supra,* 371 F.Supp. at 622–623. "As the restraints imposed on pretrial detainees must be circumscribed to include only those which are absolutely necessary, the state bears the burden of justification in curtailing personal liberties." *O'Bryan v. County of Saginaw, Michigan, supra,* 437 F.Supp. at 595.

In the present case, plaintiffs' class consists of both pretrial detainees and convicted prisoners; the latter are comingled with the detainees [Filings # 6, 39].

Where pretrial detainees and convicted persons are co-mingled in their cell assignments, the Constitutional common denominator must be the rights of the presumed innocent. Accordingly, a showing of a total picture of confinement which constitutes a deprivation of due process for the pretrial detainees and which can-

not be remedied except by changes which will affect the convicted and detainees alike will necessitate relief for both groups.

*O'Bryan v. County of Saginaw, Michigan, supra,* 437 F.Supp. at 596; *see also Owens-El v. Robinson,* 442 F.Supp. 1368, 1374 (W.D.Pa.1978). Therefore, this opinion will be applied equally to the members of plaintiffs' class, both pretrial detainees and convicted prisoners.

### Constitutional Guidelines

In the recent opinion of *Moore v. Janing,* 427 F.Supp. 567 (D.Neb.1976), this Court faced similar constitutional challenges asserted on behalf of pretrial detainees incarcerated in the Douglas County Jail in Omaha, Nebraska. Noting the standards applicable to pretrial detainees, this Court stated that "the state is required to use the 'least restrictive alternatives' to achieve its interests and may not deprive a detainee of his liberty to an extent greater than necessary." *Moore v. Janing, supra,* 427 F.Supp. at 571. Moreover, this Court noted that deprivations may be imposed on detainees for legitimate purposes only if such deprivations are justified by compelling necessity. *Moore v. Janing, supra.* The cases which follow these concepts are legion. *See, e. g., Miller v. Carson,* 563 F.2d 741 (5th Cir. 1977); *Detainees of Brooklyn House of Detention for Men v. Malcolm,* 520 F.2d 392 (2d Cir. 1975); *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974); *Mitchell v. Untreiner,* 421 F.Supp. 886 (N.D.Fla.1976); *United States ex rel. Wolfish v. Levi,* 406 F.Supp. 1243 (S.D.N.Y.1976); *Dillard v. Pitchess,* 399 F.Supp. 1225 (C.D.Cal.1975); *Inmates of Suffolk County Jail v. Eisenstadt,* 360 F.Supp. 676 (D.Mass.1973); *Brenneman v. Madigan,* 343 F.Supp. 128 (N.D.Cal.1972); *Jones v. Wittenberg,* 323 F.Supp. 93 (N.D. Ohio 1971), *aff'd sub nom, Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972); *Hamilton v. Love,* 328 F.Supp. 1182 (E.D.Ark.1971); *cf. Feeley v. Sampson,* 570 F.2d 364 (1st Cir. 1978) (reasonable relationship); *Main Road v. Aytch,* 565 F.2d 54 (3rd Cir. 1977). Accordingly, this Court, consistent with our decision in *Moore,* will consider each claim presented by the parties upon motion for summary judgment and determine whether the conditions imposed by the defendants are the least restrictive form of incarceration with due regard for the need for order and institutional security.

### Non-Legal Visitation Rights

■ The plaintiffs protest the restrictive conditions imposed on their visiting privileges, specifically the lack of visitation facilities, the frequency of visits, and the denial of contact visitation. Defendants maintain that such restrictive conditions are necessary to preserve jail security and discipline [Affidavit of Sheriff Clyde Storie].

The importance of visitation rights has increasingly been considered by the courts. *See, e. g., O'Bryan v. County of Saginaw, Michigan, supra,* 437 F.Supp. at 598–99; *Barnes v. Government of Virgin Islands, supra,* 415 F.Supp. at 1228–29; *Miller v. Carson, supra,* 401 F.Supp. at 893–95; *Rhem v. Malcolm, supra,* 371 F.Supp. at 625–26. In each of these cases, the courts found that the restrictive conditions imposed by jail administrators were not justified by security needs. In *Rhem v. Malcolm, supra,* the court wrote:

> The conditions of visiting are simultaneously fundamental to institutional security and to inmate morale. When the two are in conflict, the need for security is paramount; but the need must be supported by the evidence, and the doctrine of least necessary restraint requires, as a matter of due process that jail visiting conditions be curbed only to the extent needed to assure institutional security and administrative manageability.

*Rhem v. Malcolm, supra,* 371 F.Supp. at 625.

This Court has on occasion denied visitation rights to inmates when justified by overriding security and administrative needs. *See Rowland v. Wolff,* 336 F.Supp. 257, 259–60 (D.Neb.1971) (Urbom, C. J.). In *Moore v. Janing, supra,* this Court reviewed substantially similar visitation rules and found such rules "not constitutionally restrictive." *Moore v. Janing, supra,* 427 F.Supp. at 575. However, each case must be examined in light of the particular circumstances involved.

In the present case, the defendants have stated that private visitation is permitted when no security problem has been presented. Regarding contact visitation, the defendants have stressed the impossible security problems involved in implementing contact visitation privileges, specifically the passing of contraband. Moreover, the term of confinement at the jail is often very brief—from seven to ten days. *See, e. g., Feeley v. Sampson, supra,* 570 F.2d at 363, in which the court under similar circumstances denied the right to contact visitation. *See also Oxendine v. Williams,* 509 F.2d 1405 (4th Cir. 1975).

In addition, the plaintiffs have cited the lesser restrictive rules which exist in the Nebraska Penal and Correctional Complex as support for their contentions regarding the adequacy of jail conditions at Thurston County Jail. The conditions existing at the Nebraska Penal Complex are factors relevant in deciding whether the imposition of restrictive conditions on visitation are justified, but not conclusive. *Feeley v. Sampson, supra,* 570 F.2d at 364; *Teterud v. Burns,* 522 F.2d 357, 361 n. 9 (8th Cir. 1975).

In the present case, the Court is of the opinion that the following language is controlling on the issue of visitation:

> While some penal institutions permit "contact visits," that is visits where they can actually touch their visitor, they are not routine for detention facilities. Allowing contact visits would present a security problem at the jail. Since the jail is predominately a facility for pretrial detainees, the average inmate is in the jail for a relatively short period of time and the administration often does not have the opportunity to ascertain the history and traits of an inmate or the identity of his visitors.
>
> Installation of metal detectors, fluoroscopes, strip search rooms, the testing of urine samples for drugs and other measures aimed at detecting the entry of contraband are standard in prison facilities where contact visits are allowed. To re-quire these in this antiquated jail would place an undue burden on the administration. The stationing of a guard in a contact visit room could inhibit communications between inmates and their visitors. Presently, conversations between inmates and their visitors are not monitored.
>
> Institutional considerations, security and related administrative problems permit reasonable limitations being placed on visits. *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).
>
> As long as there are reasonable visitation conditions, their form will remain in the province of the jail administration. In the area of prison security, much must be left to the discretion of the administration and a federal court should go no farther in a given case than constitutional necessities require. *Pell v. Procunier, supra.*

*Owens-El v. Robinson,* 442 F.Supp. 1368, 1389 (W.D.Pa.1978).

However, despite the adoption of the *Robinson* guidelines by this Court it is believed that disputed issues of fact remain. The existence of these issues of fact with respect to many elements of the visitation procedure and the security needs at Thurston County Jail make it imprudent for this Court to pass on the claims of the plaintiffs without a full and complete picture of the actual practices employed at the institution. For these reasons, the Court hereby denies plaintiffs' motion for summary judgment with respect to the issue of non-legal visitation rights.

*Access to Courts*

The plaintiff class has requested summary judgment with respect to defendants' denial of plaintiffs' access to the courts, specifically the failure to provide an adequate law library and the failure to provide adequate facilities and procedures. The defendant also requests summary judgment on these issues. The Court will consider each issue separately.

*Law Library*

The Supreme Court has recently held that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

*Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *see also United States v. West*, 557 F.2d 151, 153 (8th Cir. 1977); *Gilmore v. Lynch*, 319 F.Supp. 105 (N.D.Cal.1970), *aff'd sub nom, Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

■ While obviously the Court does not deny that plaintiffs have a constitutional right of access to legal reference materials, the Court, after viewing the pleadings, affidavits, and depositions submitted by the parties is of the opinion that the defendants are entitled to judgment as a matter of law. *See* F.R.Civ.P. 56(c). The Court bases its opinion on the following. First, the defendants have stated that a law library is available to the members of plaintiffs' class. This library is at the Thurston County Court House which is located in the same building as the jail [Affidavit of Clyde Storie, Sheriff, Thurston County Jail]. Moreover, plaintiffs admit in their reply brief that the defendants agree that it would be a simple matter to supply access to the District Judge's law library, located in the court house [Plaintiffs' reply brief at 2 n. 2]. Second, defendants state that "no inmate has ever requested to use the library and no inmate has been refused access to such books." [Affidavit of Sheriff Clyde Storie]. Moreover, members of plaintiffs' class readily admit that they have never requested access to the law library nor do they know of anyone who has [Depositions of plaintiffs Robert Thomas and Moses White Eagle].

■ Furthermore, in light of the statements elicited in the depositions of the plaintiffs, White Eagle and Thomas and the defendant Storie, the Court must refuse to make a determination on this matter. It is a well established judicial policy that federal courts must refrain from rendering advisory opinions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) (declaratory judgment). In *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937), Chief Justice Hughes wrote:

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. (Citations omitted).

*Aetna Life Insurance Company v. Haworth, supra*, 300 U.S. at 240–41, 57 S.Ct. at 464 (declaratory judgment). As the plaintiffs have neither requested nor have they been denied access to a law library, they would have this Court render an advisory opinion upon a "hypothetical state of facts." This the Court cannot do.

Therefore, plaintiffs' motion for summary judgment is hereby denied, and the defendants are awarded partial summary judgment on this matter.

*Legal Visitations*

■ The plaintiffs and defendants have separately requested summary judgment with respect to the defendants' failure to provide adequate procedures and facilities for attorney-client visitation. The Court is of the opinion that both motions for summary judgment must be denied.

Plaintiffs contend that there are no separate facilities for attorney-client conferences and they are unable to hold conferences with their attorneys in private, impeding plaintiffs' right to meaningful access to the courts. These contentions have been supported by various affidavits submitted by the plaintiffs.

However, the defendant, Sheriff Storie, in his deposition has stated that separate rooms are available for attorney-client visitations and the normal practice is to allow the attorney and his client access to such

rooms for private consultation. [*See also* the deposition of Ione Storie]. Moreover, the same individuals who contend that they have been unable to consult in private with the plaintiff admit that they have had access to separate rooms for visitation [Deposition of Michael Schilling].

In addition, plaintiffs claim that on occasion they have been denied access to their attorneys. Yet, their own attorneys are unable to pinpoint the times when they were denied visitation [Deposition of Michael Schilling]. The depositions of plaintiffs Thomas and White Eagle have also failed to shed any light on this matter.

In *Moore v. Janing, supra,* this Court recognized that an inmate must have the opportunity for a meaningful, confidential conference with his attorney. *Moore v. Janing, supra,* 427 F.Supp. at 575–76. However, in *Moore* the Court specifically held that "facilities for private attorney-client visits do not exist" in the jail. In the present case, in light of the controverted facts presented by the parties, the Court declines to rule on the motions presented. Rather, the Court desires a complete picture of the procedures employed and facilities available for attorney-client visitation before a proper determination can be made. Therefore, the motions for summary judgment submitted on behalf of both parties on this matter are hereby denied.

### Due Process of Law

Plaintiffs request a second partial summary judgment with respect to various denials of minimal due process safeguards. Specifically, the plaintiffs protest the defendants' failure to post and disseminate jail regulations governing Thurston County Jail, the failure of the defendants to follow jail regulations in the imposition of punishment, and finally the failure of said jail regulations to adequately notify inmates of proscribed conduct due to their vague and overbroad provisions. The Court will address each issue separately.

### Posting and Dissemination of Jail Rules

█ In *Moore v. Janing,* this Court held that "[i]nmates have a right to notice of rules which govern prisoner conduct, rights and privileges." *Moore v. Janing, supra,* 427 F.Supp. at 577. "Prior notice of jail rules is indispensable to a subsequent due process enforcement of those rules by the imposition of sanctions or even denial of privileges." *Moore v. Janing, supra, quoting Hamilton v. Love,* 358 F.Supp. 338, 346 (E.D.Ark.1973).

The defendant, Sheriff Storie, maintains that the jail regulations are now posted in the booking area and in the hallway between the women's and men's cell area. The rules had been posted on the jail door and inside the jail door areas but this practice was discontinued as the inmates continually tore the rules off the wall and destroyed them [Deposition of Sheriff Clyde Storie]. Sheriff Storie further states that the inmates had been informed of the availability of the rules and copies of the rules were disseminated to them. In time, this practice was not always followed due to the turnover at the jail and the disinterest of the prisoners. The Court is not clear as to whether the practice was completely discontinued.

In *Moore v. Janing,* this Court merely ordered the posting of jail regulations and notice of their availability in "public places." *Moore v. Janing, supra,* 427 F.Supp. at 577. This the defendants have done. However, plaintiffs contend that such compliance is inadequate. In light of the circumstances existing at the jail, the Court will defer ruling on plaintiffs' motion until a further determination can be made with respect to the feasibility of imposing stricter posting and dissemination procedures.

### Discipline without Due Process

█ Plaintiffs contend that the defendant Storie, and his agents and employees have failed to comply with Rule 11 procedures in connection with the imposition of sanctions or discipline or the removal of privileges. Plaintiffs support this contention by presenting Sheriff Storie's deposition wherein he states that he has no documents or forms that would implement the notice procedures required by the rule.

However, the defendant Storie maintains that he has never imposed sanctions under the rule; thus, he has never had to follow the procedures for giving notice [Affidavit of Sheriff Clyde Storie].

Plaintiffs' brief further attempts to support their contentions by citing answers contained in a deposition of Sheriff Storie to the question of whether he has followed the procedures. Yet the Court is unable to ascertain from the deposition whether the Sheriff has failed to follow the procedures before imposing sanctions or has failed to follow the procedures because he *never had* to impose sanctions [*see* Plaintiffs Memorandum in Support of Second Partial Summary Judgment at 8–9]. The significance of the defendant's negative answer is unclear. Therefore, the Court will refrain from ruling on this motion until a further inquiry can be made with respect to this issue.

*Vagueness and Overbreadth*

██ The jail regulations governing Thurston County Jail were promulgated by defendant Huber, District Judge of the Sixth Judicial District, pursuant to Nebraska state law. Neb.Rev.Stat. § 47–101 (Reissue 1974). Plaintiff class argues that such rules are vague and overbroad, thereby failing to give proper notice of proscribed conduct.

The Supreme Court has set forth the general standard with respect to those statutes which fail to give a person "fair warning" of proscribed or required behavior:

It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *see Wainwright v. Stone*, 414 U.S. 21, 22, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and

phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. *Cf. Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *United States v. National Dairy Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).

Plaintiffs cite various cases to support their argument that certain words contained in the jail regulations are vague and overbroad. However, the Court is not persuaded that these cases are supportive of plaintiffs' claim. Each of these cases dealt with statutes applicable to the public at large. In the present case, we are confronted by regulations applicable to the residents of a county jail. As was stated earlier, the Court is reluctant to enmesh itself in the day-to-day operations of a penal institution, *Procunier v. Martinez, supra*, especially in matters relating to discipline and internal administration. *Rhodes v. Sigler*, 448 F.2d 1237, 1238 (8th Cir. 1971). Instead, the Court is convinced this issue is sufficiently disposed of by the language of Circuit Judge Van Dusen in *Meyers v. Alldredge*, 492 F.2d 296 (3rd Cir. 1974), wherein he wrote:

Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. See, for example, *Gittle-*

*macker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970); *Long v. Parker*, 390 F.2d 816 (3d Cir. 1968); *Sostre v. McGinnes*, 334 F.2d 906, 908 (2d Cir. 1964). As such, it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security.

*Meyers v. Alldredge*, supra, 492 F.2d at 310.

In light of the paramount need for prison security, the Court believes that the jail regulations have been sufficiently drawn to provide inmates with a "fair warning" of proscribed or required behavior. "Condemned to the use of words, we can never expect mathematical certainty." *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972).

As there are no genuine issues of material fact, the motion for summary judgment is denied as a matter of law.

An order has been filed contemporaneously herewith in accordance with this memorandum opinion.